**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| DONOVAN GARDNER, individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NUMBER: |
| v. | ) ) | |
| CARVER BIBLE COLLEGE, INC., ROBERT W. CRUMMIE, SR., THOMAS G. FRITZ, FRANK OAKLEY, TERRY ALEXANDER, | ) ) ) ) ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) ) | |

**COMPLAINT FOR DAMAGES IN CLASS ACTION**

COMES NOW Plaintiff, Donovan Gardner, individually and on behalf of all others similarly situated, by and through counsel, and herein avers for Plaintiff's Complaint for Damages in Class Action as follows:

## I. *INTRODUCTION*

1.

Robert W. Crummie, Sr., Thomas G. Fritz, Frank Oakley, and Terry Alexander (collectively, "Officers") have systematically defrauded numerous students (including Plaintiff) out of federal student loan funds using Carver Bible

College, Inc. ("Carver") as an enterprise in furtherance of the Officers' fraudulent schemes.

2.

Despite being fully aware that Plaintiff and other students similarly situated were entitled to their student loan funds, the Officers refused to release the funds to Plaintiff and others.

3.

Instead, the President of Carver falsely blamed the U.S. Department of Education ("DOE"), indicating that Carver was "waiting for their approval to release the rest of the funds[,]" conflicting with the DOE's position that the "Department did not instruct Carver College personnel to freeze the disbursement of school refunds to the students."

4.

To date, Plaintiff and others similarly situated are still waiting for the release of their student loan funds, including Alethea Hutchinson.

## II. *JURISDICTION*

5.

Plaintiff incorporates and re-alleges all of the allegations set forth in the preceding paragraphs.

### A. Subject Matter Jurisdiction

6.

This action arises, in part, out of the federal civil Racketeering Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. §§ 1961, *et seq.*

7.

As such, this Honorable Court has subject-matter jurisdiction over this matter.

8.

Insofar as all of the claims arise out of a common nucleus of operative facts, this Honorable Court has supplemental jurisdiction over all claims.

### B. Personal Jurisdiction and Venue

9.

At all times relevant to this action, Plaintiff, Donovan Gardner ("Gardner"), was a student at Carver Bible College, Inc. ("Carver") and a domiciliary of the State of Georgia.

10.

Carver is a Georgia non-profit corporation having its principal place of business at 3870 Cascade Road, Atlanta, Georgia 30331.

11.

Carver can be served through its registered agent for service of process at Robert W. Crummie, Sr., 3870 Cascade Road, Atlanta, Georgia 30331.

12.

Robert W. Crummie, Sr. ("Crummie") serves on the Board of Trustees ("Board") for Carver and is the President and Chief Executive Officer ("CEO") of Carver; Crummie can be served at 3870 Cascade Road, Atlanta, Georgia 30331.

13.

Thomas G. Fritz ("Fritz") serves on the Board for Carver and is also an officer of Carver; Fritz and can be served at 3870 Cascade Road, Atlanta, Georgia 30331.

14.

Frank Oakley ("Oakley") serves as the Chairman of the Board for Carver and is also an officer of Carver; Oakley can be served at 3870 Cascade Road, Atlanta, Georgia 30331.

15.

Terry Alexander ("Alexander") is the Vice President of Business Affairs for Carver; Alexander can be served at 3870 Cascade Road, Atlanta, Georgia 30331.

16.

Insofar as Carver, Crummie, Fritz, Oakley, and Alexander (collectively, "Defendants") systematically conduct business in Atlanta, Georgia, and insofar as the actions giving rise to this lawsuit occurred in Atlanta, Georgia, Defendants are subject to personal jurisdiction in Georgia.

17.

Venue is proper in this Honorable Court pursuant to 18 U.S.C. § 1965(a).

### III.  *THE SCHEME TO SYSTEMATICALLY DEFRAUD OTHERS*

18.

Plaintiff incorporates and re-alleges all of the allegations set forth in the preceding paragraphs.

#### A. *The Individuals Controlling the Scheme to Defraud Others*

19.

Crummie, Fritz, Oakley, and Alexander (collectively, "Officers") are officers of Carver and are authorized to act on behalf of Carver.

20.

Being a member of the Board and the President and CEO of Carver, Crummie controls the affairs of Carver.

21.

Being the Chairman of the Board and an officer for Carver, Oakley also controls the affairs of Carver.

22.

Being the Vice President of Business Affairs for Carver, Alexander also controls the affairs of Carver.

23.

Furthermore, being the Vice President of Business Affairs for Carver, Alexander is intimately familiar with the financial condition, the revenue, and the expenses for Carver.

24.

Additional members of the Board, who may have direct or indirect control over Carver, and who may have been aware of the scheme to defraud students include Anthony Dixon (Vice Chairman, "Dixon"), C. L. Jordan (Secretary, "Jordan"), Weston Irby (Treasurer, "Weston"), Donald Canty ("Canty"), Clifford Ice ("Ice"), Frank Lewis ("Lewis"), Johnny McBurrows ("McBurrows").

### B. The Enterprise Used for Defrauding Others

25.

Carver purports to be a non-profit, institution of higher education that is controlled by the Officers.

26.

However, in addition to using Carver as an institution of higher education, during the regular course of conduct the Officers used Carver as an enterprise to receive federal student loan funds, which the Officers had no intention of properly disbursing to the students.

27.

In advancing their fraudulent scheme, the Officers represented to the students that the federal student loans would be properly applied to educational expenses, and any refunds of the federal student loans would be properly disbursed to the students.

28.

Instead of properly disbursing the refunds to the students, the President of Carver falsely blamed the DOE, indicating that Carver was "waiting for their approval to release the rest of the funds."

29.

The DOE, however, indicated that the "Department did not instruct Carver College personnel to freeze the disbursement of school refunds to the students."

30.

As a result of their fraudulent scheme, Defendants have accumulated funds that rightfully belong to Plaintiff.

31.

To this day, those funds continue to be withheld from Plaintiff.

## C. *Instrumentalities of Interstate Commerce (Postal Service and Electronic Mail) and the Predicate Acts*

32.

Carver and the Officers used instrumentalities of interstate commerce, including the United States Postal Service ("USPS") and electronic mail, in furtherance of their scheme to defraud Plaintiff and other students.

## D. *The Specific Acts of Fraud*

### 1. **Material Representation of Fact**

33.

Plaintiff Donovan Gardner ("Gardner") properly applied for federal student financial aid and was the intended recipient of:  (a) $5,730.00 in federal Pell

grants; (b) $4,452.00 in federal subsidized student loans; and (c) $5,936.00 in federal unsubsidized student loans.

34.

Attached hereto as Exhibit A is a true and correct copy of the award notice that confirms Gardner's federal student financial aid award from Carver.

35.

Carver student Alethea Hutchinson ("Hutchinson") properly applied for federal student financial aid and was the intended recipient of: (a) $5,730.00 in federal Pell grants; (b) $4,452.00 in federal subsidized student loans; and (c) $5,936.00 in federal unsubsidized student loans.

36.

Attached hereto as Exhibit B is a true and correct copy of the award notice that confirms Hutchinson's federal student financial aid award.

37.

Despite being awarded federal student financial aid, neither Plaintiff Gardner nor Hutchinson received proper disbursement of the federal student financial aid.

38.

Instead, on January 5, 2015, Crummie sent a letter to the students, including Plaintiff, indicating that Carver had not received the funds from the DOE and asking the students to "return and register for the spring 2015 semester" and that Carver had "worked through the issues with the Department of Education and [was] confident that the same scenario will not be repeated."

39.

Attached hereto as Exhibit C is the letter sent by Crummie on January 5, 2015.

40.

On January 17, 2015, Crummie sent another letter to the students, including Plaintiff, indicating that the DOE "are the ones in control, not Carver" and that Carver would "contact you [the students] immediately when the funds arrive to inform you when to come pick up your disbursements."

41.

Attached hereto as Exhibit D is the letter sent by Crummie on January 17, 2015.

42.

On February 12, 2015, Crummie sent yet another letter to the students, including Plaintiffs, indicating that the DOE had rejected the request for funds and that Carver could not release the funds.

43.

Attached hereto as Exhibit E is the letter sent by Crummie on February 12, 2015.

44.

On March 24, 2015, Crummie sent yet another letter to the students, including Plaintiffs, stating that "the US Department of Education (Dept of Ed) requires us to post aid to student accounts and show refund amounts, if any, to student accounts before we actually receive the funds."

45.

Attached hereto as Exhibit F is the letter sent by Crummie on March 24, 2015.

46.

Even though none of the federal student aid was actually disbursed, Terry Alexander ("Alexander") posted to Plaintiff Gardner's account that a total of $10,388.00 in financial aid had been disbursed to Plaintiff Gardner.

47.

Attached hereto as Exhibit G is Gardner's account information, showing the false disbursements as transaction numbers 6347, 6348, 6349, and 6350.

48.

Similarly, even though none of the federal student aid was actually disbursed, Alexander posted to Hutchinson's account that a total of $7,843.00 in financial aid had been disbursed to Hutchinson.

49.

Attached hereto as Exhibit H is Hutchinson's account information, showing the false disbursements as transaction numbers 6244, 6245, 6293, and 6294.

**2. Knowing Falsity**

50.

Despite Crummie's representations to the students, according to Channel 2 Action News, "The Department [of Education] did not instruct Carver College personnel to freeze the disbursement of school refunds to students."

51.

That news article, published on March 12, 2015, can be found at: <http://www.wsbtv.com/news/news/local/students-say-their-out-money-metro-college/nmFZ3/>.

52.

Thus, at a minimum, Crummie knew of the falsity of his representations in the March 24, 2015 letter to the students.

53.

Furthermore, when Alexander posted to Plaintiff Gardner's and Hutchinson's accounts that the student financial aid had been disbursed, Alexander was fully aware that there were no such disbursements to either Plaintiff Gardner or Hutchinson.

### 3. Intent to Deceive

54.

The only reasonable explanation for Crummie's false statement is that Crummie intended to deceive Plaintiff and other students that were awaiting financial aid.

55.

The only reasonable explanation for Alexander's false entries is that Alexander intended to deceive Plaintiff and other students that were awaiting financial aid.

56.

It is entirely possible that other officers (including the remaining Defendants) and other members of the Board were fully aware of Crummie's and Alexander's actions and participated in the scheme to defraud Plaintiff and other students.

### 4. Reasonable Reliance

57.

Relying on the letters from Crummie (that the funds would be disbursed) and relying on the notations by Alexander (that the funds were already disbursed) Plaintiff enrolled in Carver and expended additional funds in furtherance of his education.

### 5. Loss and Damages

58.

Unfortunately for Plaintiff, the federal student financial aid was never disbursed to Plaintiff by Defendants.

59.

Instead, as of May 18, 2015, Plaintiff has been unable to access the website for Carver and has also been unable to reach Carver *via* telephone..

60.

Because Plaintiff cannot avoid repayment of federal student loans, the deprivation of those federal student loans by Defendants is a direct cause of the injury to Plaintiff.

### E. Pattern of Fraud

61.

The numerous victims of Defendants' fraudulent scheme (including Plaintiff Donovan Gardner, Alethea Hutchinson, and a host of other students) show that Defendants engaged in a pattern of behavior that was designed to defraud Plaintiff and other students.

### F.     Additional Evidence to be Uncovered During Discovery

62.

The discovery process is expected to uncover the depths to which the Officers have defrauded others, including:  (a) the names of other victims; (b) the precise amount that the other victims have been defrauded by the Officers; (c) the degree to which Carver have been used by the Officers to defraud others; (d) the material misrepresentations that the Officers made in furthering their scheme to defraud others; and (e) the involvement of other Board members and officers.

## IV.   CLAIMS

### A. Count I - Federal Civil RICO (Officers)

63.

Plaintiff incorporates and re-alleges all of the allegations set forth in the preceding paragraphs.

64.

PERSONS:  The Officers are "persons" as defined in 18 U.S.C. § 1962.

65.

ENTERPRISE:  Carver is an "enterprise" as defined in 18 U.S.C. § 1962.

66.

ASSOCIATION WITH ENTERPRISE:  The Officers (i.e., the persons) are associated with Carver (i.e., the enterprise) because they are officers of Carver.

67.

OPERATED OR MANAGED ENTERPRISE:  Being on the Board and also being officers of Carver, the Officers operated or managed Carver.

68.

RACKETEERING ACTIVITY:  The Officers executed a scheme to defraud numerous students, including Plaintiffs, and used the U.S. Postal Service and electronic mail in furtherance of their systematic scheme to defraud.

69.

PATTERN:  The Officers defrauded numerous students, including Gardner and Hutchinson.

70.

CONSPIRACY:  On information and belief, the other officers and members of the Board knew of Crummie's and Alexander's scheme to defraud students and were complicit in that scheme.

71.

Since Plaintiff is the victim of the Officers' fraudulent schemes, Plaintiff is entitled to recovery.

## B.  Count II - State Civil RICO (All Defendants)

72.

Plaintiff incorporates and re-alleges all of the allegations set forth in the preceding paragraphs.

73.

PERSONS:  The Officers are "persons" as defined in OCGA §§ 16-14-1, *et seq*.

74.

ENTERPRISE:  Carver is an "enterprise" as defined in OCGA § 16-14-3(6).

75.

ASSOCIATION WITH ENTERPRISE:  The Officers (i.e., the persons) are associated with Carver (i.e., the enterprise) because they are officers of Carver.

76.

OPERATED OR MANAGED ENTERPRISE:  Being on the Board and also being officers of Carver, the Officers operated or managed Carver.

77.

RACKETEERING ACTIVITY:  The Officers executed a scheme to defraud numerous students, including Plaintiffs, and used the U.S. Postal Service and electronic mail in furtherance of their systematic scheme to defraud.

78.

PATTERN:  The Officers defrauded numerous students, including Plaintiff Gardner and Hutchinson.

79.

CONSPIRACY:  On information and belief, the other officers and members of the Board knew of Crummie's and Alexander's scheme to defraud students and were complicit in that scheme.

80.

Since Plaintiff is the victim of the Officers' fraudulent schemes, Plaintiff is entitled to recovery.

### C. Count III - Loss of Use of Money (All Defendants)

81.

Plaintiff incorporates and re-alleges all of the allegations set forth in the preceding paragraphs.

82.

As a result of the actions of Defendants, Plaintiff has suffered damages for loss of use of money in an amount to be proven at trial, but in no event less than the funds that Defendants never disbursed to Plaintiff.

### D. Count IV - Actual Damages (All Defendants)

83.

Plaintiff incorporates and re-alleges all of the allegations set forth in the preceding paragraphs.

84.

As a result of the fraud committed by Defendants, Plaintiff is entitled to actual damages to be proven at trial.

### E. Count V - Treble Damages (Officers)

85.

Plaintiff incorporates and re-alleges all of the allegations set forth in the preceding paragraphs.

86.

As a result of the violations of 18 U.S.C. § 1962, Plaintiff is entitled to treble damages from the Officers.

### F. Count VI - Treble Damages (All Defendants)

87.

Plaintiff incorporates and re-alleges all of the allegations set forth in the preceding paragraphs.

88.

As a result of the violations of OCGA §§ 16-14-1, *et seq.*, Plaintiff is entitled to treble damages from Defendants.

### G. Count VII – Attorneys' Fees (All Defendants)

89.

Plaintiff incorporates and re-alleges all of the allegations set forth in the preceding paragraphs.

90.

As a result of the violations of 18 U.S.C. § 1962 and OCGA §§ 16-14-1, *et seq.*, Plaintiff is entitled to attorneys' fees.

91.

Moreover, to the extent that Defendants acted in bad faith by committing fraud, Plaintiff is entitled to attorneys' fees.

### H. Count VIII - Punitive Damages (All Defendants)

92.

Plaintiff incorporates and re-alleges all of the allegations set forth in the preceding paragraphs.

93.

Defendants showed willful misconduct, malice, fraud, wantonness, oppression, and an entire want of care in executing their scheme to defraud Plaintiff and a host of other students.

94.

Defendants acted with a specific intent to harm Plaintiff and other students.

95.

Thus, Plaintiff is entitled to an award of punitive damages from Defendants, in an amount sufficient to punish, penalize, and deter Defendants from committing these types of wrongs in the future.

### I. *Count IX - Injunctive Relief (All Defendants)*

96.

Plaintiff incorporates and re-alleges all of the allegations set forth in the preceding paragraphs.

97.

Since Carver is an enterprise that has been used as an instrumentality of fraud, Plaintiff is entitled to injunctive relief in which this Honorable Court orders divestiture of all ill-gotten gains from Defendants.

### V. *CLASS ACTION ALLEGATIONS*

98.

This action is brought by Plaintiff individually and as a class action under the provisions of Fed. R. Civ. P. for damages.

99.

The class of plaintiffs for whose benefit the named Plaintiff brings this action is defined as follows:

All persons who have applied for and received federal
student financial aid through Carver Bible College, Inc.,
but have not received their federal student financial aid
proceeds within the four years preceding the filing of the
instant action.

100.

On information and belief, Defendants have a pattern and practice of failing
and refusing to disburse its students' loans proceeds (including Plaintiff Donovan
Gardner, Alethea Hutchinson, and a host of other students) and that Defendants
engaged in a pattern of behavior that was designed to defraud Plaintiff and other
students.

101.

The names and addresses of the Plaintiff Class Members can readily be
determined through a ministerial review of the financial aid records of Carver.

102.

The membership of the class is numerous and joinder of individual plaintiffs
is impractical.  On information and belief, the pattern and practice of Defendants
have taken place over a number of years prior to today.

103.

There are questions of law and fact common to all members of the putative class, and these common questions of law and fact predominate over any individual issues. The principle questions pertinent to the class as a whole include:

a) Whether Defendants have received Plaintiff's and the putative class members loan proceeds from the Department of Education;

b) Whether Defendants have failed and refused to disburse to Plaintiff and the putative class their loan proceeds to which Plaintiff and the putative class are entitled;

c) Whether Defendants are "persons" within the meaning of 18 U.S.C. § 1962 and OCGA §§ 16-14-1 *et seq*.;

d) Whether Carver is and "enterprise" within the meaning of 18 U.S.C. § 1962 and OCGA § 16-14-3(6);

e) Whether the Officers (as defined in paragraph 1) are associated with Carver (i.e., the enterprise);

f) Whether the Officers operated or managed Carver (i.e., the enterprise);

g) Whether the Officers executed a scheme to defraud Plaintiff and the putative class members;

h) Whether the Officers and members of the Board of Carver knew of the

scheme to defraud Plaintiff and the putative class members and were complicit in the scheme;

i)  Whether the Officers and members of the Board of Carver used the U.S. Postal Service and electronic mail it their scheme to defraud Plaintiff and the putative class members;

j)  Whether Plaintiff and the putative class members have suffered damages as a result of Defendants' scheme to defraud;

k)  Whether Plaintiff and the putative class members are entitled to treble damages from Defendants pursuant to 18 U.S.C. § 1962 and/or OCGA § 16-14-6(c);

l)  Whether Plaintiff and the putative class members are entitled to attorneys' fees from Defendants;

m) Whether Plaintiff and the putative class members are entitled to an award of punitive damages against Defendants;

n)  Whether Plaintiff and the putative class members are entitled to injunctive relief; and

o)  Defenses raised by Defendants.

104.

The claims of the named Plaintiff are typical of the claims of the members of the plaintiff class, which all arise from the same operative facts and are based on the same legal theory, and Plaintiff's claims will thus adequately represent those of the Plaintiff Class Members.

105.

The named Plaintiff will fairly and adequately protect the interest of the Plaintiff Class Members.  Plaintiff has retained counsel with experience in class action litigation, and they are not aware of any interest that might cause them not to vigorously pursue this case.

106.

A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder is impracticable.  The expense and burden of individual litigation make it virtually impossible for the members of the class to proceed individually, and it is therefore most efficient to resolve all claims based on Defendants' conduct in one forum.

107.

Plaintiff is aware of no difficulties that will be encountered in the management of this litigation that would render the action unmanageable.  This is

not a class action that will require an analysis of Defendants' conduct as to individual class members.

108.

Plaintiff's and Plaintiff Class Members' claims against Defendants are based on Defendants' failing and refusing to disburse Plaintiff's and the class members' student loan proceeds.   Defendants knowingly engage in this routine, standard practice, and this practice does not vary among members of the proposed plaintiff class.

109.

Prosecution of separate actions by individual members of the plaintiff class would create adjudications that would be dispositive of the interests of the other members not parties to the adjudications.

110.

Without a class action mechanism, members of the plaintiff class would be substantially impaired or impeded in their ability to protect their interests.   The value of claims of the individual class members would be in an amount that makes prosecution outside of the class action uneconomical.

111.

The claims of Plaintiff and Plaintiff Class Members are meritorious.  The named Plaintiff believes he will prevail on the merits based upon the failure and refusal of the Defendants to properly disburse the student loan proceeds to its recipients.

112.

A final judgment on the merits of the named Plaintiff's claims would be fully dispositive of the claims and interests of those similarly situated who are not specifically named as a plaintiff in this action.

113.

This Court is an appropriate forum for the present action in that the Class Representative, is and at all times herein mentioned has been, a resident of this District; and the Defendants conduct business within this District.

WHEREFORE, Plaintiff prays for relief on behalf of himself and all others similarly situated as follows:

a)  For an order certifying this claim as a class action;

b)  For judgment in favor of Plaintiff and the putative class on Plaintiff's claims;

c)  For an award of actual damages sufficient to make Plaintiff and the members of the putative class whole;

d)  For an order requiring divestiture by Defendants of all ill-gotten gains;

e)  For an award of attorneys' fees;

f)  For pre-judgment interest to the extent permitted by law;

g)  For an award of punitive damages;

h)  For a trial by jury; and

i)  Any other legal or equitable relief that this Honorable Court deems to be fair and just.

Respectfully submitted, this 19th day of May, 2015.

**DeWOSKIN LAW FIRM, LLC**

/s/Daniel E. DeWoskin
Daniel E. DeWoskin
Georgia Bar No. 220327
Sam S. Han, Ph.D.
Georgia Bar No. 322284

24 Lenox Pointe
Phone 404-987-0026
Fax 404-378-0717
dan@atlantatrial.com

**HURT STOLZ, P.C.**

s/  James W. Hurt, Jr.
By:  James W. Hurt, Jr.
Georgia Bar No. 380104

345 West Hancock Avenue

Athens, Georgia 30601
(706) 395-2750
Fax:  (866) 766-9245
jhurt@hurtstolz.com

**ATTORNEYS FOR PLAINTIFF
AND THE PUTATIVE CLASS**